UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA CARTER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-727 |
| | § | |
| SOUTHSTAR MANAGEMENT, LLC and | § | |
| APPLE I TIC, LLC and | § | |
| APPLE II TIC, LLC and | § | |
| PUTTY HILL TIC, LLC and | § | |
| SOUTHSTAR CAPITAL GROUP I, LLC | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are defendants Southstar Management, LLC, Apple I TIC, LLC, Apple II TIC, LLC, Putty Hill TIC, LLC and Southstar Capital Group I, LLC's (collectively, "Defendants") (1) motion to exclude the testimony and report of Brian Tison, M.D. (Dkt. 19); (2) motion for summary judgment (Dkt. 20); and (3) motion to exclude the mold sampling report relied upon by Virginia Carter's expert (Dkt. 18). Having considered the motions, response, reply, evidence, and applicable law, the court is of the opinion that: (1) the motion to exclude the testimony of Tison should be GRANTED; (2) the motion for summary judgment should be GRANTED; and (3) the motion exclude the mold report should be DENIED AS MOOT.

**I. BACKGROUND**

Virginia Carter alleges that she suffered personal injury and property damage as the result of mold exposure in the apartment owned and operated by Defendants. Dkt. 10. Carter had a pre-existing asthmatic condition. Dkt. 20-5. On April 25, 2015, when Carter's air conditioning unit started leaking, Carter submitted a maintenance request. Dkt. 20-3 at 9. Southstar Management

responded to the request and told her the issue had been resolved. Dkt. 20-3 at 9. Shortly after, Carter made another maintenance request due to a wet carpet which Southstar replaced. *Id.* at 11.

On February 11, 2016, Carter was hospitalized for asthma exacerbation, pneumonia, and other respiratory issues. *Id.* at 14. Carter was bedridden for several months after being hospitalized. Dkt. 25-4 at 16–17. While cleaning out her apartment, Peter Chernitsky, Carter's son, discovered mold in the apartment. Dkt. 25-5 at 6. Because of the presence of mold, Carter decided to move in with a friend. Dkt. 25-4 at 19. On February 22, 2015, Chernitsky, purchased a home mold test kid from Home Depot and obtained samples to test for the presence of mold. Dkt. 25-5 at 11. The results of the mold test indicated that there was mold inside and outside of the apartment. *Id.* at 11–12. Since moving out of the apartment, Carter's symptoms have improved and she has not returned to the hospital. Dkt. 25-4 at 20–21. Carter alleges she sustained permanent health problems because of the mold exposure in the apartment such as lack of strength, experiencing mental fog, and being more susceptible to pneumonia. *Id.* at 22–23. Because of the exposure to mold, Carter is suing Defendants for negligence, gross negligence, and claims under the Texas Deceptive Trade Practices Act. Dkt. 10.

## II. Legal Standards

### A. *Daubert*

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony. 509 U.S. 579, 597–98, 113 S. Ct. 2786 (1993). The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore*, 151 F.3d at 276. "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* Fed. R.

3

Evid. 104(a); *Moore*, 151 F.3d at 276. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

**B.      Summary Judgment**

A court shall grant summary judgment if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs*, 395 F.3d 533, 538–39 (5th Cir. 2004) (footnote omitted). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed R. Civ. P. 56(e). The court must view the evidence in the light most favorable to each non-movant and draw all justifiable inferences in favor of each non-movant. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors*, 395 F.3d at 539 (footnote omitted).

### III. ANALYSIS

**A.      Evidentiary Objections**

First, the court will address Defendants' evidentiary objections. In Carter's reply to Defendants' motion, Carter attached two articles and made reference to a study and two websites. Defendants object that all five pieces of evidence are inadmissible because the materials lack

4

authentication and are hearsay. Dkt. 28 at 1–2. Carter did not respond to Defendants' evidentiary objection.

Although the substance of the evidence offered in support of summary judgment must be admissible at trial, the material may be presented in a form that would not, in itself, be admissible at trial. Fed. R. Civ. P. 56(c); *see Lee v. Offshore Logistical & Transp., L.L.C.*, 858 F.3d 353, 355 (5th Cir. 2017). To prevent the use of materials that lack authenticity or violate the rules of evidence, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The comments to the Rule indicate that "the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, Advisory Comm. Notes, 2010 Amendment.

Defendants argue that because Carter's expert, Brian Tison, did not rely or opine on the articles and Carter did not attach any affidavits, the evidence should be excluded. Dkt. 28 at 1. Defendants also argue that the evidence is hearsay, does not fall under the learned treatise exception, and that Carter has not offered any evidence that the evidence is "so authoritative that [it] warrant[s] judicial notice." *Id.* at 2. The court agrees. Carter has not shown that it can present the substance of the evidence in a form that would be admissible in court. The objected evidence has not been authenticated, is hearsay, does not fall under a hearsay exception, and does not warrant judicial notice. Accordingly, Defendants' objections are SUSTAINED.

**B.**   ***Daubert* Analysis of Tison's Testimony**

Next, the court will address Defendants' *Daubert* motion. As a threshold matter, the court determines that this is a toxic tort case. Carter is alleging personal injury and property damage as a result of mold exposure. Because this is diversity case, Texas law governs substantive issues. In

Texas, "a cause of action relating to mold exposure constitutes a toxic-tort cause of action. *Starr v. A.J. Struss & Co.*, No. 01-14-00702-CV, 2015 WL 4139028, at *7 (Tex. App.—Houston [1st Dist.] 2015); *see also Pretus v. Diamond Offshore Mgmt Co.*, No. 1:06-CV-627, 2010 WL 11552857, (E.D. Tex. Sept. 14, 2010) (analyzing mold exposure claims as a toxic tort).

In Texas, toxic tort cases require proof of both general and specific causation. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997). "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351–52 (5th Cir. 2007) (*citing Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). A court is not required to make a determination on the admissibility of specific causation evidence, if there is no admissible general causation evidence. *Knight*, 482 F.3d at 351.

In making these determinations, "[s]cientific knowledge of harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case." *Seaman v Searcor Marine L.L.C.*, 326 Fed.Appx 721, 723 (5th Cir. 2009); *see also Hooks v. Nationwide Hous. Sys., LLC*, No. CV 15-729, 2016 WL 3667134, *8 (E.D. La. July 11, 2016) (noting that general causation required the plaintiffs to establish, "by a preponderance of evidence, that they were exposed to a level of mold sufficient to cause health effects."). While plaintiffs are not required to provide evidence of the precise level of exposure to a toxic substance, there should be sufficient information of the level of exposure. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999).

Defendants argue that Tison's testimony is unreliable to satisfy the causation elements of Carter's toxic tort claims. Dkt. 19 at 12. Defendants contend that Tison cannot prove general causation because Tison cannot prove what "substance" Carter was exposed to. *Id.* at 13.

Defendants argue that Tison should be able to prove by the preponderance of the evidence that Carter was exposed to a level of mold sufficient to cause any adverse health effects. *Id.* at 14. Additionally, Defendants argue that "the notion that indoor mold growth can lead to significant toxicity in occupants of moldy buildings has been very controversial in the scientific literature." *Id.*

Carter does not argue that Tison can testify as to general causation. Instead, Carter relies on *McClain v. Metabolife Int'l, Inc.* and contends that the "court need not undertake an extensive *Daubert* analysis on the general toxicity question when the medical community recognizes that the agent causes the type of harm a plaintiff alleges". Dkt. 25 at 17–18; *see also* 401 F.3d 1233, 1239 (11th Cir. 2005). Carter argues that *Smith v. Katz* and the excluded studies demonstrate that it is well recognized in the scientific community that mold is capable of exacerbating asthma. Dkt. 25 at 18–19; 2013 WL 1182074 (D.V.I. Mar. 22, 2013). As discussed above, the studies mentioned by Carter are not proper summary judgment evidence. Further, *Smith* does not stand for the notion that it is well accepted in the scientific community that mold exposure can exacerbate asthma. In *Smith*, there was expert testimony about the "very high" amounts of mold in the air and the possible effects of mold exposure. 2013 WL 1182074 at *9. In the instant case, the court has no evidence that it is well recognized in the scientific community that mold can exacerbate asthma and will analyze whether Tison's testimony is reliable under *Daubert*.

In his report, Tison concluded that Carter's symptoms of shortness of breath and pneumonia, were more likely than not associated with her mold exposure. Dkt. 25-2. To establish causation, Tison relied on differential diagnosis and worked to eliminate other possible triggers. *Id.* Tison relied on the mold report performed by Carter's son which identified mold in Carter's apartment, such as Alternaria, which was also a mold she tested positive to in skin testing and laboratory work.

*Id.* at 4. Even assuming that reliance on the home mold report is proper methodology, the report does not provide the mold level Carter was exposed to which allegedly caused her illness. Dkt. 25-6.

In his deposition, Tison stated that stated that there was no consensus in the medical community about the health effects of exposure to mold. Dkt. 25-3 at 13–14. Tison also stated that he did not review any studies or medical literature in order to be able to provide his opinions in this case. Dkt. 20-8 at 5. Further, Tison stated that he did not know what levels of the types of mold identified in the report would be required to cause adverse health effects, and what levels of mold Carter was actually exposed to. Dkt. 25-3 at 14. Although a plaintiff is not required to provide evidence of the precise level of exposure to a toxic substance, here, Tison concedes he does not have an estimate of Carter's exposure level to any specific substance. The strongest evidence was that Carter's symptoms improved when she removed herself from the apartment. Dkt. 25-2 at 4. A temporal connection standing alone is entitled to little weight determining causation unless there is an established scientific connection between exposure and illness. *Moore*, 151 F.3d at 278.

Tison's deposition and report show that he cannot demonstrate general or specific causation. Tison did not opine on general causation, and even if he did, he cannot testify to the levels of mold Carter was exposed to in her apartment.[1] Further, Tison cannot prove specific causation because he does not offer any evidence that the actual amounts of mold to which Carter was exposed were of a sufficient concentration level to cause Carter's asthma exacerbation and other pulmonary issues. As Tison acknowledges, mold is ubiquitous and he has no support for the theory that mold in Carter's home caused her illness. Accordingly, Tison's causation testimony is unreliable and

---

[1]The Fifth Circuit "has not written on the question of whether an expert opinion based on differential diagnosis can meet the *Daubert* standard." *Pick v. American Medical Systems, Inc.*, 198 F.3d 241 (5th Cir. 1999). However, the court's exclusion of Tison's testimony is not based on the unreliability of his differential diagnosis.

properly excluded under *Daubert*. Defendant's motion to exclude the testimony of Tison is GRANTED.

C.     **Summary Judgment Analysis**

Carter contends that expert causation testimony is not required to survive summary judgment. Dkt. 25 at 35. According to Carter, under Texas law, lay testimony is sufficient to establish causation when a sequence of events provide a logical, traceable connection between the event and the condition. *Id.* Further, Carter "submits that lay persons are generally aware of the scientific consensus that mold can exacerbate asthma." *Id.* at 36. However, this a toxic tort case, and toxic tort cases require expert evidence to establish causation. *See Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tot case."); *Hooks*, No.CV 15-729, 2016 WL at *13 ("In a toxic tort case, the plaintiff must present admissible expert testimony to establish general causation as well as specific causation.").[2]

Tison was Carter's only expert witness and as it stands, Carter has no expert evidence establishing causation. All three of Carter's claims have a causation element. Because toxic tort cases require expert evidence of both general and specific causation, and there is no expert evidence on causation, Defendants' motion for summary judgment is GRANTED.

---

[2]Further, Carter is not simply alleging asthma exacerbation. In her deposition, Carter alleged that the mold exposure caused her a lot of permanent effects such as being tired, lacking strength, getting a lot of mental fog, and being more susceptible to pneumonia. Dkt. 25-4 at 23. As such, this is not within the general experience and common sense of a lay person.

## IV. CONCLUSION

Defendants' motion to exclude the expert testimony of Tison (Dkt. 19) is GRANTED. Defendants' motion for summary judgment (Dkt. 20) is GRANTED. Carter's claims are DISMISSED WITH PREJUDICE. Because the court is granting summary judgment on all claims, Defendants' motion to exclude the mold report (Dkt. 18) is DENIED AS MOOT. The court will enter a final judgment consistent with this order.

Signed at Houston, Texas on October 24, 2018.

_____
Gray H. Miller
United States District Judge